OLSEN ET AL., RESPONDENTS, *v.* THE PORT HURON LIVE STOCK ASSOCIATION, APPELLANT.

[Submitted June 18, 1896. Decided June 22, 1896.]

CONTRACTS—*Construction*—*Sale of ewe sheep.*—Where a contract for the sale of ewe sheep recited that the sheep were to be in "healthy condition" at the time of delivery, the fact that the vender, prior to delivery, may have negligently permitted a number of the ewes to be bred, whereby they dropped their lambs at an unusual and inclement season of the year, to the loss of the vendee, does not constitute a breach of the contract, in the absence of evidence that the words had a local or peculiar signification by which they were understood as a warranty that the ewes were not to be pregnant at the time of delivery.

*Appeal from Tenth Judicial District, Choteau County.*

CONTRACT. The cause was tried before DU BOSE, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

Plaintiffs and respondents sue the defendant, the Port Huron Live Stock Association, a corporation, to recover $792.17 and

interest and attorney's fees, and for a decree foreclosing a certain chattel mortgage executed by Lewis Wilson, the president of the defendant company, to the plaintiffs, to secure a promissory note made by the defendant to the plaintiffs on October 10, 1893, for said sum of $792.17, due twelve months after date. The mortgage was the usual chattel mortgage, and embraced 825 head of sheep in Choteau county.

The defendant denied the alleged debt, or any debt, and denied that the mortgage was given to secure the debt evidenced by the promissory note heretofore referred to, and averred that the note and mortgage were given in consideration of the covenants and agreements on the part of the plaintiffs contained in a certain contract between B. G. Olson on the part of plaintiffs and the defendant whereby it was agreed by Olson to extend the balance due on the note heretofore referred to for twelve months after date on a new note to be made after the said Lewis Wilson, for the defendant, should pay to the Northwestern National Bank the sum of $800, then due on the present note. This contract also contained this provision : " I do also hereby agree to submit to arbitration a claim Lewis Wilson has against me for damages for lambs coming or dropping last winter from sheep sold by me to him, for which said note was given; and to pay such reasonable damages, if the arbitrators so decide, and costs of said arbitration if case is decided against me. The arbitrators to be W. Meade Fletcher on the part of B. G. Olson, and Donovan & Lyter for Lewis Wilson,"—dated October 10, 1893, and signed by Olson and Wilson.

The answer avers that the defendant has demanded the performance of the covenants and agreements, but plaintiffs have refused to keep and perform the same. For further defense and counterclaim the defendant alleged that in August, 1892, plaintiffs sold to defendant 850 head of ewe sheep, for which it agreed to pay at the rate of $3.50 per head; that at plaintiffs' request the defendant allowed the ewes to remain in plaintiffs' possession until the lambs should be old enough to wean, plaintiffs agreeing to take proper care of said sheep;

that at the time of making said purchase the sheep were represented to be in good condition, and nothing indicated that they were not in such condition, and defendant, relying on such representation, agreed to pay for said sheep the highest price then ruling; that on October 10, 1892, plaintiffs delivered the sheep to the defendant, and the defendant paid part of the purchase price in cash, and gave its note for the balance, payable one year from date, but that during the time between the purchase and sale of said sheep as aforesaid and the delivery to the defendant, and while the sheep were in plaintiffs' possession, plaintiffs negligently permitted the ewe sheep to mix with the male sheep, whereby a large number of said ewes became and were with lamb at the time of said delivery, of which fact the defendant was unaware; that by reason of said negligence many ewes dropped their lambs between January 7, 1893, and March 1, 1893; that by reason of plaintiffs' negligence in permitting the males to have access to the ewes, and the consequent breeding of the sheep during the winter season, the defendant lost 218 head of ewes, worth $763, and 250 lambs, worth $375; that on October 10, 1893, there was due by defendant to plaintiffs, for the balance of the purchase price of said sheep, the sum of $1,592.17, which sum the defendant refused to pay unless plaintiffs would allow reasonable damages for their negligence; that thereupon plaintiffs agreed to submit the controversy to arbitration, as evidenced by the contract heretofore referred to; that in consideration of the covenants and agreements of said contract defendant paid to plaintiffs the sum of $800 in money, and made the mortgage mentioned in the complaint, which said principal sum mentioned in said note and mortgage was the balance of the purchase price of said sheep without deducting anything for damages, it being understood and agreed that the amount of damages was to be settled for before said note and mortgage became due. The defendant asked for judgment for $335.83.

The replication denied all the averments of the answer stating new matter, and pleaded the lack of consideration for the alleged agreement in relation to arbitration, and alleged that

the only consideration for the note and mortgage was the indebtedness of the defendant to plaintiffs of $792.17, as alleged in the complaint.   The replication also avers that the agreement to arbitrate was never executed, nor did the arbitrators ever accept or in any way act in the premises, and that on March 15, 1894, plaintiff B. G. Olson notified defendant that he revoked the said alleged agreement to arbitrate, and did not intend to submit any controversy to arbitrators.   It is also denied especially, among other things, that plaintiffs ever at the time of the purchase of the sheep made any representations or agreements in relation to the sheep, except the agreement made part of the replication.   It is then alleged that on September 19, 1892, plaintiffs and defendant entered into a certain contract, whereby the defendant agreed to purchase, and plaintiffs agreed to sell and deliver, 850 ewes, more or less, not later than November 1, 1892.   This agreement, after citing the consideration of $3.50 per head, recited that the sheep would be delivered not later than November 1, 1892, "said sheep to be in healthy condition at time of delivery." In consideration of the covenants in that agreement the defendant paid to the plaintiffs $402.50, and agreed to pay $1,097.50 at time of delivery of the sheep, and the balance was to be secured by mortgage on said sheep.

The plaintiffs denied all negligence pleaded, and all loss by reason of any negligence on their part.

A jury was sworn to try the case.   The defendant admitted the due execution of the mortgage described in the complaint, and plaintiffs rested.   Thereupon the defendant sought to introduce in evidence the contract in relation to settling the dispute between the parties by arbitration.   The plaintiffs objected, and the contract was excluded.   The defendant next tried to introduce evidence to explain the custom of sheep men in relation to breeding their ewes.   This was all objected to, and the objection sustained.   Defendant then tried to prove that if the ewes dropped their lambs in January and February they would be apt to die from exposure to the cold.   All this testimony was excluded, whereupon the court advised the jury

that under the contract for the sale of. the sheep it had not been shown that there were any unhealthy sheep delivered, and that the defendant could not recover upon a counterclaim in the case. The jury were discharged, and judgment ordered for plaintiffs. Defendant appeals from the judgment.

*Donnelly & Knox*, for Appellant.

*Ransom Cooper*, for Respondents.

HUNT, J.—The real question in this case, and the one treated by the briefs as decisive, is whether plaintiffs are liable to the defendant on that clause in the contract of sale of the sheep which provided that the sheep sold were to be "in healthy condition at time of delivery." The solution of the question involves this simple inquiry : Are ewes in an unhealthy condition because pregnant in October and the three months following ? The district court decided they were not, and we affirm that view.

When the plaintiffs and defendant agreed that the sheep to be sold were to be in healthy condition at time of delivery, they meant healthy as opposed to diseased condition,—that is, that the sheep were to be free from disease; such, for instance, as scab or physical ailments or impoverishment not incidental to a band of sheep in normal and sound state of health. We do not believe that because it happened that certain of the ewes were pregnant at a particular season of the year such condition was by itself an unhealthy one. Generally speaking, fecundity in animals whose value is greatly enhanced by capabilities of an annual increase by offspring would be evidence of good health, as doubtless sterility would be evidence of ill health. That the young, if not prematurely born, are dropped at any particular season, has no relation to the condition of health of the ewes which drop them. The opportunity for conception may have been unwisely, or even negligently, given, but the fact of conception is not evidence of ill health or disease. Suppose the band of sheep had been delivered by the defendant in April, and it was agreed that the sheep were .

in healthy condition, but suppose that in April or May, when by common knowledge the lambing season prevails in Montana, the ewes did not drop their lambs, but did drop them in July thereafter; could the purchasers of the band sustain an action against the vendors upon the ground that the sheep were not healthy because the ewes were not pregnant at the particular season in which they generally are supposed to be in this latitude and climate? Manifestly not. It would be said at once that the condition of the sheep had nothing whatsoever to do with the health of the ewes.

The district court therefore, correctly excluded the evidence of the witnesses by whom it was proposed to show that lambing in January and February would be dangerous to the lives of the ewes and lambs. The words "healthy condition," used in the contract, required no extraneous explanation. They were presumably used in their primary and general acceptation. Moreover, there was no offer by defendant to prove that they had a local, technical, or otherwise peculiar signification, or that they were so used and understood in this particular instance. The court cannot go beyond the fair import of the words in the contract, nor can we add any new warranty not contemplated by the parties to the agreement.

The defendant did not offer any evidence to sustain its averments of negligence on the part of the plaintiff, nor did it rely upon or prove false representations or deceit or misrepresentations. The controversy hinged upon the construction of the words of the contract itself. The suggestion of the appellant that the arbitration agreement entered into between the parties tends to place a construction upon the contract favorable to the appellant is not sound. We regard this agreement as one of extension containing a recognition of the fact that differences had arisen in relation to the claim of appellant under the terms of the original contract, and that for the purpose of settling such differences the parties agreed to submit the matter of any damages, if any there were, to arbitration. The arbitration was not had. This action is to determine just what was to have been left to arbitration. Appellant was not

injured by failure to arbitrate, and makes no °claim that it was.

There is nothing in the language of the agreement which would warrant the court in saying that the parties understood the words "healthy condition" to mean that the ewes were not to be pregnant at the time they were delivered.

We find none of the assignments well taken. Judgment affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.